

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STEEL AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO-CLC, and LOCAL 6-765, UNITED STEEL AND FORESTRY RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, <br><br>Plaintiffs, <br><br>v. <br><br>RHODIA INC., <br><br>Defendant. | Civil Action No.: 06 C 1785 <br><br> Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

United Steel and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC, and its Local 6-765 sued on behalf of union member Earl Smith against his former employer, Rhodia Inc., and its successor, Innophos, Inc., to enforce an arbitration award. Plaintiffs claimed defendants violated the arbitrator's mandate by failing to reinstate Smith to his former position, or to a substantially equivalent position. On plaintiffs' motion, Innophos was dismissed from this case. The parties now cross-move for summary judgment. For the reasons set forth below, plaintiffs' motion for summary judgment is granted, and Rhodia's cross-motion is denied.

## BACKGROUND

The following facts are undisputed. Rhodia, a chemical manufacturer, and plaintiff unions are parties to collective bargaining agreements governed by the Labor Management Relations Act, 29 U.S.C. § 141 *et seq.* Def. Facts at ¶¶ 1-6. The agreements require the parties to arbitrate their disputes. Pls. Facts at ¶ 7. Rhodia operates a silica manufacturing plant in Chicago Heights, Illinois. Def. Facts at ¶ 5. Adjacent to its silica plant, Rhodia operated a phosphates plant until August 2004, when it sold the phosphates operation to Innophos. Pls. Facts at ¶ 4; *see also* Def. Facts Ex. A (Rhodia's Answer) at ¶ 30. Smith worked at the phosphates plant as an electrician for over 20 years. Pls. Facts at ¶¶ 4, 10, Ex. 11 (arbitration award) at 2.

This case arises from Smith's termination in July 2004, one month before Innophos took over the phosphates plant. Smith had a checkered work history: while he was disciplined for using inappropriate language and for threatening a security guard, he received a commendation for being a team player. *Id.* On June 13, 2004, he was accused of flinging open a door of a work vehicle to hit a co-worker during an argument. *Id.* at 3. Although he insisted he never intended to hurt his co-worker, he was terminated. *Id.* at 3-6.

Pursuant to their collective bargaining agreements with Rhodia, plaintiffs initiated grievance proceedings to protest Smith's termination. Pls. Facts at ¶ 11. Arbitrator Lawrence M. Cohen held a hearing in August 2005 to resolve two issues: (1) whether Smith was properly discharged; and (2) if not, the appropriate remedy. Pls. Facts Ex. 11 (arbitration award) at 1, 6. During the hearing, the arbitrator focused on the first issue, and refused to admit evidence about the prospects of reinstating Smith to his former position. *See* Def. Corrected Resp. Facts Ex. I (hearing transcript) at 74:21-75:16. The arbitrator intended to leave reinstatement issues to the parties:

2

> I usually don't want to get into remedy questions at the hearing. I leave the remedy to the parties. The parties work out the remedy. If they can't work it out, I retain jurisdiction, but . . . I am not going to explore further . . . . [W]hether there is or is not a position [available to Smith] is not something I am going to decide in this decision.

*Id.*

After the hearing, the arbitrator concluded Rhodia wrongfully terminated Smith because the evidence did not establish Smith intended to hurt his co-worker. Pls. Facts Ex. 11 (arbitration award) at 7-9. The arbitrator held "[Smith] shall be offered reinstatement to his former or substantially equivalent employment, without loss of seniority." *Id.* at 9. The arbitrator specifically ordered Rhodia to offer reinstatement "upon receipt of [his] decision." *Id.* The arbitrator retained "jurisdiction for [60] days to resolve any controversy with respect to the implementation of [his] award." *Id.* at 10. In addition, the arbitrator required Rhodia to pay "any lost wages or benefits, less interim earning[s]." *Id.*

Shortly after December 2, 2005, Rhodia received a copy of the arbitration award. Pls. Facts at ¶ 19. Rhodia contacted Innophos about the prospect of reinstating Smith to his former position at the phosphates plant, but was informed that no position was available. Corrected Phelan Aff. at ¶ 3. Rhodia discussed reinstatement with plaintiffs and Smith on several occasions between December 2005 and February 2006. *Id.* at ¶¶ 7-9. During these discussions, plaintiffs insisted that Smith be reinstated to his former position. Def. Corrected Additional Facts at ¶¶ 11, 14-15. Throughout this period, Rhodia made no reinstatement offers. *See* Pls. Facts at ¶¶ 22, 24. Instead, Rhodia offered a monetary settlement in mid-January 2006. *Id.* at ¶ 22, Ex. 6 (Phelan Dep.).

Rhodia delayed making a reinstatement offer until March 21, 2006. *See* Pls. Facts at ¶ 23. In a letter, Rhodia offered Smith two alternatives: (1) a $75,000 settlement; or (2) reinstatement to

3

an electrician position at the silica plant, conditioned upon successful passage of a written examination. Def. Corrected Resp. Facts Ex. B (Rhodia's March 21, 2006 letter). In response, plaintiffs requested a 90-day training period for Smith. Pls. Facts at ¶ 31. Rhodia refused. Smith did not accept either offer within two weeks of receiving Rhodia's letter; Rhodia considered its offers rejected, and notified Smith that his seniority was broken. *Id.* at ¶ 32. Plaintiffs sought relief from the arbitrator. Def. Corrected Additional Facts at ¶ 24. But the arbitrator declined on the basis that his jurisdiction had expired. *Id.* This case followed.

## DISCUSSION

### I. Legal Standards

On cross-motions for summary judgment, each movant must satisfy Fed. R. Civ. P. 56's requirements. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A movant has the initial burden of demonstrating that it is entitled to summary judgment. *Cont'l Cas. Co.*, 427 F.3d at 1041. Once a movant has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Cont'l Cas. Co.*, 427 F.3d at 1041. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the non-moving party. *Id.* A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Judicial review of arbitration awards is limited. *Cuna Mut. Ins. Soc'y v. Office & Prof'l Employees Int'l Union, Local 39*, 443 F.3d 556, 561 (7th Cir. 2006). The court has no authority to alter an arbitration award, or to substitute its judgment for that of an arbitrator. *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 183-84 (7th Cir. 1985). Nor may the court interpret an ambiguous arbitration award, unless ambiguities can be resolved from the record. *Tri-State Bus. Machs., Inc. v. Lanier Worldwide, Inc.*, 221 F.3d 1015, 1017 (7th Cir. 2000) (citing *Ethyl Corp.*, 768 F.2d at 188). When the record is insufficient to resolve ambiguities, the court should remand the award to the arbitrator for clarification. *See id.* (remand should be used sparingly to avoid delay).

## II. Plaintiffs' Theory

Rhodia devotes considerable portions of its briefs to arguing plaintiffs improperly changed their theory of recovery without amending their complaint. Plaintiffs initially sued both Rhodia and Innophos, seeking to enforce the arbitration award and to reinstate Smith to his former position currently managed by Innophos. Compl. at ¶¶ 7-8, 32. Plaintiffs voluntarily dismissed Innophos from this case. *See* Minute Order, Dkt. No. 40 (June 29, 2006). Based on the dismissal, Rhodia argues plaintiffs must amend their complaint before seeking summary judgment against Rhodia.

Rhodia's argument is baseless. The complaint clearly seeks to enforce the arbitration award, to which Rhodia is a party. Compl. at ¶ 32. The dismissal of Innophos does not change plaintiffs' claims that Rhodia failed to comply with the award. Absent a new theory of recovery, this case is distinguishable from the cases cited by Rhodia to support its argument that parties are barred from raising new theories on summary judgment. *See, e.g., Insolia v. Philip Morris Inc.*, 216 F.3d 596, 606 (7th Cir. 2000) ("plaintiff may not amend his complaint through arguments in his brief"). Rhodia's argument lacks any factual or legal basis and must therefore be rejected.

5

## III. Rhodia's Failure to Comply with the Arbitration Award

### A. Untimely Reinstatement Offer

Under the arbitration award, Rhodia must offer to reinstate Smith "to his former or substantially equivalent employment, without loss of seniority, *upon receipt* of [the award]." Pls. Facts Ex. 11 (arbitration award) at 9 (emphasis supplied). The evidence conclusively establishes Rhodia has failed to timely comply with the award. It is undisputed that Rhodia received a copy of the award shortly after December 2, 2005. Pls. Facts at ¶ 19. Rhodia admits it made no offer of reinstatement between December 2005 and February 2006. *See* Pls. Facts at ¶ 22, 24, Ex. 6 (Phelan Dep.); *see also* Corrected Phelan Aff. at ¶¶ 3, 7-9. Not until March 21, 2006, did Rhodia offer to reinstate Smith to a purportedly equivalent position at its silica plant. Def. Corrected Resp. Facts Ex. B (Rhodia's March 21, 2006 letter). Under the award's plain language, this offer is untimely.

Rhodia blames plaintiffs for its failure to timely comply with the award, arguing plaintiffs insisted on reinstating Smith to his former position, and showed no interest in any alternatives. To support this argument, Rhodia cites *In re Times Publishing Co.*, 72 N.L.R.B. 676 (1945). But *Times Publishing* is inapposite because it dealt with parties' refusal to arbitrate, rather than enforcement of an arbitration award. *Id.* at 704. Moreover, plaintiffs' purportedly unreasonable demands do not absolve Rhodia from its obligation to offer reinstatement upon receiving the award. Pls. Facts Ex. 11 (arbitration award) at 9. Thus, Rhodia is responsible for failing to timely comply with the award.

### B. Waiver

Rhodia argues plaintiffs have waived their right to challenge the reinstatement offer because they failed to seek relief from the arbitrator, who retained "jurisdiction for [60] days to resolve any *controversy* with respect to the implementation of [his] award." *Id.* at 10 (emphasis supplied). During the 60-day period, however, Rhodia made no reinstatement offer. *See* Pls. Facts at ¶¶ 22, 24.

6

Absent a reinstatement offer, even if plaintiffs, as Rhodia asserts, would reject any offer short of reinstatement to the phosphates plant, there was no controversy. Thus, plaintiffs lacked basis to invoke the arbitrator's jurisdiction during the 60-day period. Moreover, the record does not indicate, nor does Rhodia argue, that under the parties' collective bargaining agreements, plaintiffs had the affirmative obligation to initiate arbitration when reinstatement issues arose. *See Chicago Typographical Union v. Chicago Sun-Times*, 935 F.2d 1501, 1509-10 (7th Cir. 1991) (interpreting an arbitration clause to determine when the parties' dispute becomes an arbitrable issue). Therefore, Rhodia fails to raise a genuine issue of material fact as to whether plaintiffs waived their challenges.

In addition, Rhodia fails to provide any legal authority to impose upon plaintiffs the burden to return to arbitration. Rhodia relies on two distinguishable cases: *First National Maintenance Corp. v. NLRB*, 452 U.S. 666 (1981), and *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960). *United Steelworkers* compelled arbitration of a dispute over the interpretation of a collective bargaining agreement, *id.* at 585; *First National*, 452 U.S. at 676-79, held an employer had no duty to bargain with unions over its decision to cease operation. Because neither decision sheds light on whether unions bear the burden to return to the arbitrator when post-arbitration disputes arise, *United Steelworkers* and *First National* offer Rhodia no aid.

C.   **"Work Now, Grieve Later"**

Rhodia argues the "work now, grieve later" principle precludes Smith from complaining about his loss of seniority on April 7, 2006, when he failed to accept the reinstatement offer. According to Rhodia, Smith was required to accept reinstatement before disputing it. Rhodia cites two non-binding decisions: *Ambrose v. Sanford Ink Corp.*, No. 96 C 829, 1997 U.S. Dist. LEXIS 21875 (N.D. Ill. Jan. 29, 1998) (Shadur, J.), and *In re Krist Oil Co.*, 328 N.L.R.B. 825 (1999).

7

*Ambrose* applies the "work now, grieve later" principle to a dispute involving the propriety of job duties. *Ambrose*, 1997 U.S. Dist. LEXIS 21875, at *24 ("matters in dispute regarding . . . propriety of work assignments are best addressed via the contractual grievance procedure"). But where, as here, the propriety of the job itself is in dispute, the principle has questionable applicability. *Krist Oil*, 328 N.L.R.B. at 834 (dissent) ("work now, grieve later" is inapplicable to reinstatements made in bad faith). In any event, this principle is inapplicable here because, even if Smith accepted Rhodia's reinstatement offer, the arbitrator would refuse to hear objections to the reinstatement on the basis that his jurisdiction had expired. Def. Corrected Additional Facts at ¶¶ 23-24.

In summary, the evidence conclusively establishes Rhodia has failed to timely comply with the arbitration award. *See* Pls. Facts at ¶¶ 22, 24, Ex. 6 (Phelan Dep.); *see also* Corrected Phelan Aff. at ¶¶ 3, 7-9. Rhodia fails to raise an issue of material fact with respect to whether its failure is excusable. Accordingly, summary judgment for plaintiffs is appropriate.

## IV. Relief

In their complaint, plaintiffs seek an order (1) directing Rhodia to comply with the arbitration award; (2) reinstating Smith to his former position; and (3) awarding attorneys' fees and costs. Compl. at ¶ 32. The issue of attorneys' fees and costs is not before the court. Ordering Rhodia to reinstate Smith to the phosphates plant is inappropriate for two reasons. First, the order would be futile because Innophos, not Rhodia, controls the phosphates plant. *See* Corrected Phelan Aff. at ¶ 3. Second, the order would render meaningless the award's alternative remedy to reinstate Smith to a "substantially equivalent" position. Pls. Facts Ex. 11 (arbitration award) at 9. Thus, the only appropriate relief is to enforce the arbitration award. The award encompasses reinstatement and back pay, which are addressed in turn.

8

### A. Reinstatement

The arbitration award requires Rhodia to offer Smith "reinstatement to his former or substantially equivalent employment." Pls. Facts Ex. 11 (arbitration award) at 9. The parties dispute the meaning of the phrase "substantially equivalent." Plaintiffs argue that a reinstatement to the silica plant, conditioned upon successful passage of a written examination, is not substantially equivalent to Smith's former position at the phosphates plant. Rhodia argues that the phrase "substantially equivalent" allows imposition of conditions to a reinstatement offer.

The parties' conflicting interpretation highlights the award's ambiguity with respect to the terms of reinstatement. The record provides no signposts to ascertain the meaning of the phrase "substantially equivalent." In fact, the evidence shows the arbitrator deliberately left the phrase ambiguous: he refused to admit evidence of reinstatement prospects, and requested the parties to tailor a remedy. *See* Def. Corrected Resp. Facts Ex. I (hearing transcript) at 74:23-24 ("I usually don't want to get into remedy questions at the hearing"). The fact that the arbitrator extended his jurisdiction for 60 days indicates he anticipated disputes over the interpretation of his award. *See id.* at 75:1-2 ("[t]he parties work out the remedy[;] [i]f they can't work it out, I retain jurisdiction"). Because the award is ambiguous and the record fails to resolve the ambiguity, this case must be remanded to the arbitrator for clarification. *Ethyl Corp.*, 768 F.2d at 188; *see also United Food & Commercial Workers Local 100A v. John Hofmeister & Son, Inc.*, 950 F.2d 1340, 1345 (7th Cir. 1991) (remanding for clarification of the phrase "make whole").

### B. Back Pay

Under the arbitration award, Smith shall "be make whole for any lost wages or benefits, less interim earning[s] but not less unemployment compensation." Pls. Facts Ex. 11 (arbitration award)

9

at 10. Rhodia argues plaintiffs are barred from recovering back pay because they failed to disclose damages pursuant to Fed. R. Civ. P. 26(a)(1). Plaintiffs correctly respond that they need not disclose back pay because Rhodia has ample notice from the award itself. Plaintiffs' non-disclosure is harmless and as a result, they are entitled to recover back pay. Fed. R. Civ. P. 37(c)(1); *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998) (parties may avoid sanctions by showing "violation of Rule 26(a) [is] either justified or harmless").

Rhodia argues Smith's failure to mitigate damages precludes a back pay award. *See, e.g., Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 110 (7th Cir. 1991) (plaintiff suing for wrongful discharge based on age discrimination owes a duty to mitigate). It is undisputed that "Smith has been paid all of his back pay up to . . . April 7, 2006[,] and has not sought alternate employment since April 7, 2006." Pls. Resp. to Def. Additional Facts ¶ 25. Rhodia's argument prevails only if the arbitrator conditioned the back pay award upon Smith's mitigation efforts.

The award is ambiguous with respect to mitigation. While the award contemplates "interim earning[s]," it does not expressly require Smith to find interim employment. *See Int'l Union of Operating Eng'rs, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 190 (7th Cir. 1996) ("we assume that an arbitrator's failure to mention offsets in his ruling means that no offset was granted"). Nor does the record shed light on whether the arbitrator intended to impose upon Smith a duty to mitigate damages. Because the award is ambiguous, this case must be remanded to the arbitrator. *See Excavating, Grading, Asphalt, Private Scavengers, Auto. Salesroom Garage Attendants, Linen & Laundry Drivers, Local 731 v. A.W. Zengeler Cleaners, Inc.*, No. 00 C 5576, 2001 WL 138932, at *3 (N.D. Ill. Feb. 16, 2001) (Kocoras, J.) (remanding award to arbitrator because the court lacked an adequate basis to determine back pay).

## CONCLUSION

For the reasons set forth above, plaintiffs' motion for summary judgment is granted, and defendant's cross-motion is denied. This case is remanded to the arbitrator for clarification on (1) whether defendant's reinstatement offer is substantially equivalent to Smith's former position; and (2) whether the back pay award requires Smith to mitigate damages.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

August 29, 2006